UNITED STATES of America and Jon P. Heydt, Special Agent, Appellees,

v.

CITIZENS STATE BANK, United States Taxpayers Union and Armin Moths, Appellants.

No. 79–1768.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1979.

Decided Jan. 16, 1980.

Gregory G. Petersen, Timothy J. Sullivan, San Diego, Cal., for appellants.

Ronald A. Dweck, Atty., Tax Division, Dept. of Justice, Washington, D. C., argued, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Charles E. Brookhart, and Ronald A. Dweck, Attys., Tax Division, Dept. of Justice, Washington, D. C., and James R. Britton, U. S. Atty., and Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., on brief, for appellees.

Before LAY,* Chief Judge, and HEANEY and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

Appellants Armin Moths and the United States Taxpayers Union (USTU) appeal from an order of the district court enforcing an Internal Revenue Service administrative summons. This case requires this Court to determine whether a claim of infringement of First Amendment rights may be used to limit the subpoena power of the Internal Revenue Service.

The pertinent facts are not in dispute. Armin Moths is a member and officer of the

* Judge Donald P. Lay became Chief Judge on January 1, 1980.

USTU, a voluntary association of citizens who are opposed to the current operation of the IRS and who make efforts to bring about changes in the United States' taxation system. In late 1978 or early 1979, IRS Special Agent Jack Dunlap saw a newspaper article listing Moths as a spokesperson for the "Liberty Amendment"[1] and recognized Moths as a "tax protestor." As a result, Dunlap caused Moths' filing record to be checked and discovered that Moths had not filed a complete federal income tax return since 1968. On the basis of that information, Dunlap was assigned to investigate Moths' potential tax liability for the years 1974–1978. When bank accounts in Moths' name and in the name of USTU over which Moths had signature authority were discovered in Lankin, North Dakota, IRS Special Agent Jon P. Heydt[2] issued a summons, pursuant to 26 U.S.C. § 7602, directing Citizens State Bank to appear before Heydt and produce *all* bank records relating to the accounts of Moths and the USTU.[3] When the bank did not appear as ordered in the summons, Heydt brought this action to enforce the summons pursuant to 26 U.S.C. §§ 7402(b), 7604(a). Moths and the USTU intervened, claiming that the release of the documents would violate their First Amendment right to free association. Following a show-cause hearing, the district court ordered that the summons be enforced, finding it to have been issued in good faith and for a proper purpose. That order has been stayed pending this appeal.

1. The "Liberty Amendment" is a proposed constitutional amendment that would change the system of taxation in the United States.

2. Agent Dunlap made a "collateral request" to Agent Heydt of the Fargo, North Dakota, IRS office asking that Heydt provide assistance in the investigation of Moths.

3. The summons ordered Citizens State Bank to produce the following:

Records, correspondence, and other data (including microfilm, copies of originals) maintained by, for, or under the control of Citizens State Bank, Lankin, North Dakota during the time period(s) from January 1, 1974 through December 31, 1978, in which Armin R. Moths had signature authority over

The appellants' basic claim is that deposit slips, signature cards and other documents contained in the bank records identify the members of and contributors to the USTU, and if the IRS were allowed access to this information, some of those who would otherwise join or contribute to the USTU would be discouraged from doing so out of fear of retaliation by the IRS. This discouragement, appellants assert, would constitute an infringement of their First Amendment right of freedom of association and is, therefore, impermissible.

The government, by contrast, contends that the summons is enforceable so long as it was issued for a proper purpose, in good faith and in accordance with statutory procedures, regardless of any possible First Amendment violation. The district court apparently agreed with this position since at the show-cause hearing it sustained, on grounds of relevancy, the government's objection to testimony concerning the negative effect on appellants' First Amendment rights. Furthermore, the district court made no mention of the appellants' First Amendment claim in its enforcement order.

■ We believe the district court erred in refusing to consider appellants' First Amendment claim. In *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court recognized the important place that freedom of association holds in this country's constitutional system:

account number 0913–0313 in the name of United States Taxpayer's Union. These records include, but are not limited to the following: Signature cards, monthly statements, deposit slips, deposited items, checks written, and records reflecting and identifying other items credited or debited to the account.

Records for any other accounts which existed at any time during 1974 through 1978 in the name of, or for the benefit of Armin R. Moths, including, but not limited to signature cards, monthly statements, deposit slips, deposited items, checks written, and records reflecting and identifying other items credited or debited to the account. Records sought are for the years 1974 through 1978 only.

Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association * * *. It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.

*Id.* at 460, 78 S.Ct. at 1171.

The Court went on to state, moreover, that maintaining the privacy of one's associations may be necessary to guarantee freedom of association:

This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. * * Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.

*Id.* at 462, 78 S.Ct. at 1171–1172.

In this case, appellants submitted to the district court three declarations by USTU members, detailing the adverse effects of the summons on USTU's organizational and fundraising activities. Similar testimony was proffered at the show-cause hearing but was deemed irrelevant by the district court. In our view, the potential for conflict with the First Amendment was raised by this evidence and the district court erred in failing to consider it.

■ The appellants met their initial burden by making a prima facie showing of arguable First Amendment infringement; the burden then shifted to the government to make the appropriate showing of need for the material. The standard to be followed was stated by Judge Henley in *Pollard v. Roberts*, 283 F.Supp. 248, 256–257 (D.E.D.Ark.), *aff'd*, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (per curiam):

[D]isclosure of the identities of members of the group can be compelled only by showing that there is a rational connection between such disclosure and a legitimate governmental end, and that the governmental interest in the disclosure is cogent and compelling.

It may be that the government can make the showing needed to justify the broad summons issued in this case. If it cannot do so at this time, it seems probable that it can issue a more limited summons that would serve the government's present needs without divulging those portions of the bank records that identify USTU members and contributors. For example, the IRS could first seek bank statements and other "blind" records indicating the status of the USTU account. If more information is needed to obtain a true picture of Moths' finances, subsequent summonses could be issued, seeking increasingly detailed information. If discrepancies are discovered, it may even be possible for the IRS to make the "cogent and compelling" showing needed to obtain the entire set of bank records, including the documents identifying USTU members.

■ We emphasize that our decision will only rarely serve to limit the reach of an IRS summons. But when the one summoned has shown a likely infringement of First Amendment rights, the enforcing courts must carefully consider the evidence of such an effect to determine if the government has shown a need for the material sought.

The cause is remanded to the district court for a determination of whether compelled disclosure of all the records sought would adversely affect appellants' freedom of association. If disclosure of some of the records would have no First Amendment implications, ordering the release of those records would, of course, be proper. But if appellants' First Amendment rights would be infringed by forcing the bank to divulge

certain documents, compelled disclosure is permissible only if the government makes the requisite showing of compelling need.