636 F.2d 221
 81-1 USTC P 9119
 UNITED STATES of America and Norman Jorgenson, Revenue Agent
of the Internal Revenue Service, Appellees,
v.
LIFE SCIENCE CHURCH OF AMERICA CHAPTER NO. 10075 and Castle
Norcutt, Pastor, Appellants.
 No. 80-1499.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 8, 1980.
Decided Dec. 15, 1980.
 
 Castle Norcutt, pro se.
 M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, Gayle P. Miller, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellees; Thomas K. Berg, U. S. Atty., Minneapolis, Minn., of counsel.
 Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.
 PER CURIAM.
 
 
 1
 On October 5, 1979 an IRS agent, Norman Jorgenson, served a summons upon appellant Norcutt as pastor of the Life Science Church, requesting information pertaining to that church's possible tax liability for 1977 and 1978. Upon Norcutt's failure to comply with the summons, the government brought this enforcement action. A hearing was held before a magistrate at which Norcutt neither cross-examined the witness (Jorgenson) called by the government, nor called any witnesses on behalf of Life Science. The magistrate found that the records and testimony requested by the IRS were relevant to a legitimate inquiry, that the information was not in the IRS's possession, and that all appropriate notices had been given. He accordingly recommended that the district court enter an order directing Norcutt and Life Science to comply with the summons. The district court adopted the magistrate's recommendation.
 
 
 2
 On appeal Norcutt urges that the IRS may not examine the religious or financial activities of a church once it has been determined that such church constitutes a tax exempt organization under § 501(c)(3).[1] In the present case he claims if the IRS would examine the organizational documents of Life Science that would be enough to convince the IRS that Life Science qualifies for § 501(c)(3) treatment. Further, Norcutt asserts the organizational documents would be sufficient to convince the IRS that Life Science's only business was religious worship. Finally, he argues that in any case the summons is overly broad.
 
 
 3
 The language of § 7605(c), the code provision which deals with IRS examination of churches, provides in pertinent part:
 
 Restriction on examination of churches
 
 4
 No examination of the books of account of a church ... shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in activities which may be subject to tax ... unless the Secretary (such officer being no lower than a principal internal revenue officer for an internal revenue region) believes that such organization may be so engaged and so notifies the organization in advance of the examination. No examination of the religious activities of such an organization shall be made except to the extent necessary to determine whether such organization is a church ... and no examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.
 
 
 5
 As may be seen, the statute expressly allows the finances of a church to be inspected for the purpose of a determination of the amount of tax the church may owe under the code. Further, the statute allows an inspection of the religious activities "to the extent necessary to determine whether such organization is a church." Although, as Norcutt asserts, this phrase could be construed to mean once a church, always a church, we do not so construe it. An organization which began exclusively for religious purposes could lose § 501(c) (3) status if it changes its focus. See Christian Echoes National Ministry, Inc. v. United States, 470 F.2d 849 (10th Cir. 1972), cert. denied, 414 U.S. 864, 94 S.Ct. 41, 38 L.Ed.2d 84 (1973). Indeed, Reg. § 301.7605-(1)(c)(3)(i) allows inspection of religious activities of an organization "to the extent necessary to determine the initial or continuing qualification of the organization (for tax exempt status) under section 501(c)(3)." Norcutt has not challenged the validity of this regulation.
 
 
 6
 Plainly without merit is Norcutt's contention that the documents he is offering for inspection are all that would be "necessary" under § 7605(c) for the Commissioner to determine the possible tax liability of Life Science. These documents by themselves appear to shed comparatively little light on either the tax exemption question or the question of unrelated business activity.
 
 
 7
 Although we can find no support for Norcutt's other arguments, based on construction of the statutes we find some merit to his contention that the summons is overly broad.[2] The Fifth Circuit has rejected as overly broad a summons virtually identical to the one issued by the IRS in this case. That court stated:
 
 
 8
 The documents sought include all documents relating to the organizational structure of the church since its inception; all correspondence files for the period between April of 1975 and January of 1978; the minutes of all meetings of the officers, directors, trustees or ministers, during this same interval; and a sample of every piece of literature pertaining to the Church. This sample from the summons amply demonstrates that it sweeps too wide. It should not have been enforced in its present scope.
 
 
 9
 United States v. Holmes, 614 F.2d 985, 988 (5th Cir. 1980) (emphasis in original) (footnote omitted).
 
 
 10
 Apparently the IRS used the same form in the present case as in Holmes.[3] In both cases, the information sought was virtually unlimited, although § 7605(c) attempts to limit the breadth of IRS summonses issued to churches. Congress intended § 7605(c) to accommodate both the IRS need to determine the tax liability of churches, and the first amendment right of churches to be free of excessive governmental entanglement in their internal affairs. In the present case, we think it likely that the IRS has requested more information than it needs, and that its requests could infringe the first amendment rights of Life Science.
 
 
 11
 In United States v. Citizens State Bank, 612 F.2d 1091 (8th Cir. 1980), this court considered a conflict between the IRS subpoena power and freedom of association under the first amendment. In that case, the IRS ordered a bank to produce its records of a tax protester organization. The records would have revealed the names of members of the organization. The organization submitted declarations of three of its members that revelation of the names would discourage people from joining or contributing to the organization. The district court deemed this information irrelevant, but this court disagreed, stating that the organization had met its "initial burden by making a prima facie case of arguable First Amendment infringement; the burden then shifted to the government to make the appropriate showing of need for the material." Id. at 1094. On remand, the district court was to apply the following standard: "(D)isclosure of the identities of members of the group can be compelled only by showing that there is a rational connection between such disclosure and a legitimate government end, and that the governmental interest in disclosure is cogent and compelling," id., quoting Pollard v. Roberts, 283 F.Supp. 248, 256-57 (E.D.Ark.), aff'd, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (per curiam).
 
 
 12
 The extent of overbreadth of the summons was neither clearly raised nor fully developed in the district court and we decline to decide it on the record before us. We note however that in this case the enforcement date for the summons has already passed, and the district court must issue a new order in any event. Accordingly, we leave it open to the government to issue a new and more narrow summons if it cares to do so, to the taxpayer to object or further object if he cares to do so, and to the district court to pass upon the constitutional issue raised, if any, in light of Holmes and Citizens State Bank.
 
 
 13
 The judgment of enforcement is vacated and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 All statutory references are to the Internal Revenue Code of 1954, as amended
 
 
 [2]
 The summons made fourteen requests:
 
 
 [1]
 All records pertaining to cash receipts and disbursements, including but not limited to, bank accounts, deposit slips, cancelled checks, records of contributions to Life Science Church of America, Chapter 10075, records of contributions by Life Science Church of America, Chapter 10075, sales of merchandise, payroll records, and records related to the payment of employment or social security taxes, for the period beginning January 1,1977 through the year ended December 31, 1978
 
 
 [2]
 All balance sheets and other statements of financial condition covering the period from January 1, 1977 through the year ended December 31, 1978, including but not limited to those showing the assets and liabilities of Life Science Church of America, Chapter 10075
 
 
 [3]
 All documents related to the organizational structure of Life Science Church of America, Chapter 10075 since the original Articles of Incorporation, charter, by-laws were issued, including any amendments made thereto
 
 
 [4]
 All correspondence files for the period January 1, 1977 through the year ended December 31, 1978
 
 
 [5]
 All records of the names and addresses of persons who are or have been officers, directors, trustees, or ministers of Life Science Church of America, Chapter 10075 at any time during the period January 1, 1977 through December 31, 1978
 
 
 [6]
 All minutes of any meetings held by the above officers, directors, trustees, or ministers of Life Science Church of America, Chapter 10075 during the period January 1, 1977 through the year ended December 31, 1978
 
 
 [7]
 One sample of each brochure, phamphlet (sic), handout, program or other literature pertaining to Life Science Church of America, Chapter 10075
 
 
 [8]
 All records reflecting the names of any employees, associates or ministers of Life Science Church of America, Chapter 10075, particularly any records reflecting the names of the individuals who have been presented credentials of ministry, certificates of ordination, diplomas, or similar statements of recognition by Life Science Church of America, Chapter 10075
 
 
 [9]
 All records reflecting the names of any other organizations that have been affiliated with Life Science Church of America, Chapter 10075 at any time during the period January 1, 1977 through the year ended December 31, 1978
 
 
 [10]
 Documents reflecting any sacerdotal functions performed by any person representing Life Science Church of America, Chapter 10075
 
 
 [11]
 All documents reflecting the principles, creeds, precepts, doctrines, practices, and disciplines espoused by Life Science Church of America, Chapter 10075
 
 
 [12]
 All documents reflecting any prerequisites or actions necessary for membership in an ordination by Life Science Church of America, Chapter 10075
 
 
 [13]
 All documents reflecting any vows of poverty that have been submitted to Life Science Church of America, Chapter 10075 by any person during the period January 1, 1977 through the year ended December 31, 1978
 
 
 [14]
 All documents reflecting any assignment of income to Life Science Church of America, Chapter 10075, by any person during the period January 1, 1977 through the year ended December 31, 1978
 
 
 [3]
 Compare the summons in this case (note 2) with United States v. Holmes, 614 F.2d 985, 987 n.3 (5th Cir. 1980)