UNITED STATES of America, and Ken Szymanski, Revenue Agent, Internal Revenue Service, Petitioners,

v.

MANUFACTURERS BANK OF SOUTHFIELD, Respondent.

UNITED STATES of America, and Ken Szymanski, Revenue Agent, Internal Revenue Service, Petitioners,

v.

MICHIGAN NATIONAL BANK OF OAKLAND, Respondent.

UNITED STATES of America, and Ken Szymanski, Revenue Agent, Internal Revenue Service, Petitioners,

v.

CAPITOL SAVINGS & LOAN, Respondent.

UNITED STATES of America, and Ken Szymanski, Revenue Agent, Internal Revenue Service, Petitioners,

v.

MICHIGAN NATIONAL BANK OF OAKLAND, Respondent.

UNITED STATES of America, and Ken Szymanski, Revenue Agent, Internal Revenue Service, Petitioners,

v.

COVENANT CREDIT UNION, Respondent.

Civ. A. Nos. 81–70159 to 81–70163.

United States District Court,
E. D. Michigan, S. D.

April 8, 1981.

D. Patrick Mullarkey, Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard A. Rossman, U.S. Atty., Detroit, Mich., for the U.S.

Raymond L. Morrow, Southfield, Mich., for respondents.

## MEMORANDUM OPINION AND ORDER

### PHILIP PRATT, District Judge.

The Internal Revenue Service (IRS) directed summonses to the respondent banks in these five cases, seeking records relating to the finances of Marvin I. Niskar and Joanne Niskar (the taxpayers) for the years 1977 through 1979.[1] The taxpayers administratively stayed compliance with the summonses. Then the IRS instituted these cases by filing petitions to enforce the summonses and affidavits in support. The Court ordered the respondent banks to show cause why they should not be compelled to obey the IRS summonses. The taxpayers then filed motions to intervene and raised various objections to enforcement of the summonses.[2] On March 23, 1981 the Court heard the arguments of the government, the respondent banks, and the intervening taxpayers.

■ In IRS summons enforcement proceedings in order to obtain enforcement the government need only show that the summons was issued for a legitimate purpose, that the information sought is relevant to that purpose and not already in the government's possession, and that the designated administrative procedures have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254, 13 L.Ed.2d 112 (1964); *United States v. LaSalle National Bank,* 437 U.S. 298, 313–314, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978). "The requisite showing is generally made by the affidavit of the agent who issued the summons and who is seeking enforcement." *United States v. Garden State National Bank,* 607 F.2d 61, 68 (3rd Cir. 1979). Once the government satisfies this burden, it has established a *prima facie* case for enforcement of the summons. The burden then shifts to those opposing enforcement to show "an abuse of the court's process" or "to disprove the actual existence of a valid civil tax determination or collection purpose". *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255 and *United States v. LaSalle National Bank, supra,* 437 U.S. at 316, 98 S.Ct. at 2367.

■ In the cases at bar the government has fulfilled its initial burden by means of affidavits from the IRS agent seeking enforcement. The agent has sworn that the summonses are directed towards documents relevant to an examination of the civil tax liabilities of the Niskars for the years 1977 through 1979. The agent avers that

"The purposes of the examination are, for the years under examination, to deter-

---

1. The summonses seek testimony from the respondent banks concerning the Niskars' tax liability, as well as:

   "Copies of all records maintained and kept by your organization reflecting financial transactions for calendar years 1977, 1978 and 1979 between your organization and the following entities and individuals:
   A. Marvin I. Niskar, SSN: 375–34–9409;
   B. Marvin I. (SSN: 375–34–9409) and Joanne (SSN: 366–42–8978) Niskar;
   C. Life Science Church of The Willow, Trustee Marvin I. Niskar and/or Joanne Niskar;
   D. Marvin Niskar Agency, division of the Life Science Church of The Willow."

2. The government consented to allow the taxpayers to intervene in these cases.

The taxpayers' initial "Statement of Claims and/or Defenses" suggested that the taxpayers would assert several defenses, including: overbreadth and irrelevance of the summonses, Fifth Amendment privileges, and governmental non-compliance with the statutory procedures for examining "books of account" of a church (26 U.S.C. § 7605). In their subsequent memorandum of law, and in oral argument, the taxpayers apparently abandoned all these arguments against enforcement; the taxpayers only pressed the First Amendment defense. The Court finds the other initial arguments to be frivolous and therefore this Opinion will only discuss the First Amendment claim.

mine the taxpayers true federal income tax liabilities, and, if any taxes are determined to be due from the taxpayers for the years under examination, to prepare federal income tax returns on behalf of the taxpayers for those years. The taxpayers have failed to file returns for the years 1977 through 1979."

The burden, then, is on the taxpayers to demonstrate that the IRS investigation is being conducted in bad faith or for an improper purpose.

The taxpayers here state that they are members and trustees of the Life Science Church of the Covenant, and that Mr. Niskar is the ordained minister of this church. The taxpayers also state that they assigned all their property and income to the Life Science Church of the Covenant. Consequently the taxpayers interpret the IRS inquiry concerning their failure to pay taxes as a form of religious persecution. In other words, the taxpayers argue that enforcement of the IRS summonses would violate the First Amendment. Specifically, the taxpayers allege that the IRS discriminates against the Life Science Church by singling out this religious group for an inordinate number of tax investigations and audits and that this practice inhibits and discourages membership in the Life Science Church of the Covenant because local church members are fearful of similar harassment.

In support of their First Amendment defense the taxpayers have presented identical affidavits from several local church members. Basically, the church members aver that they are apprehensive about their affiliation with the church because of their belief that members of the Life Science Church around the country are subject to discriminatory treatment at the hands of the IRS.[3]

■ These affidavits fail to raise a genuine issue of material fact. In the first place, the affidavits are unacceptable under Rule 56(e), which provides that affidavits in opposition to summary judgment

> "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." F.R.C.P. 56(e).

None of the affidavits suggests that any affiant has first-hand knowledge of "what the government has done to ... members of the Church of Life Science around the country"; none of the affiants purport to have personal knowledge of the allegedly preferential treatment handed out to members of other, more traditional churches. Moreover, the affidavits consist of inadmissible opinion evidence, for example:

> "it is clear to me that my membership in the Church of Life Science will expose me to a much higher likelihood of government intrusion than would occur if I were a member of some other, more established church ..."

Such vague and conclusory statements cannot be considered adequate to satisfy the taxpayers' burden at this stage.

Perhaps recognizing the insufficiency of the affidavits, the taxpayers request an opportunity to conduct discovery before the Court decides on summary enforcement. The taxpayers argue that proper affidavits to rebut the government are unavailable, because the government has exclusive pos-

---

**3.** The pertinent passage in the affidavits reads as follows:

> "Having seen what the government has recently done to Mr. and Mrs. Niskar and to members of the Church of Life Science around the country, which it apparently has not undertaken to do against other or more established churches or members of such churches, including indictments, civil and criminal tax investigations, etc., it is clear to me that my membership in the Church of Life Science will expose me to a much higher

> likelihood of government intrusion than would occur if I were a member of some other, more established church, that my very association with other members of the Life Science Church and with the church itself will increase my normal exposure to such tax investigations or other government intrusions, and I have become apprehensive that my choice of religious expression and associations must be changed or terminated because of past and threatened intrusions."

session of the facts concerning the disparate treatment of church members. However, the taxpayers have not submitted affidavits explaining why proper affidavits are unavailable, even though Rule 56(f) requires this much in order to survive summary judgment. F.R.C.P. 56(f).

■ Furthermore, the taxpayers have not alleged the elements of a discrimination claim. Although the taxpayers allege that the IRS gives disproportionate scrutiny to the tax affairs of this particular religious group, the taxpayers have not alleged that the members of the Life Science Church are similarly situated to members of other churches. For example, if one group refused to file tax returns or pay taxes and another group complied with the tax laws, it would not be discriminatory for the IRS to treat the two groups differently by conducting more audits and investigations of the former group. In the cases at bar it is undisputed that the taxpayers failed to file tax returns for three years. They do not allege or suggest that the IRS shows favorable treatment to members of other religious groups who fail to file tax returns. The overwhelming inference in the cases at bar is that the IRS investigation is for a legitimate secular purpose. There is no indication that the inquiry into the individual taxpayers' finances has anything at all to do with their religious beliefs or affiliations.[4]

Finally, the taxpayers have not cited a single case suggesting that this differential-treatment-of-religions claim is a valid ground for denying enforcement of an IRS summons. Instead the taxpayers rely on a line of cases establishing the First Amendment right of associational privacy. *E. g., NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Bates v. Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). These Supreme Court cases are inapposite, however, because they all involved direct government efforts to obtain lists of organization members. In the cases at bar there is, of course, no basis for an inference that the government seeks disclosure of the identities of church members; nor is there any reason to believe that enforcement of the summons may incidentally reveal the names of church members. Moreover the Supreme Court has held that First Amendment claims of associational privacy must include a factual showing of actual adverse consequences stemming from disclosure of the members' names—objective harm such as threatened or accomplished physical assaults, economic reprisal, public hostility and harassment, or other concrete forms of persecution. *Buckley v. Valeo,* 424 U.S. 1, 69–71, 96 S.Ct. 612, 658–659, 46 L.Ed.2d 659 (1976). The most that is alleged here is that members of the Life Science Church of the Covenant are "apprehensive" about their association with the church because they may be the subjects of IRS investigations or audits. Thus there is not even a showing of actual subjective deterrence of membership or contributions (such a showing was held to be inadequate in *Buckley v. Valeo, id.*). Indeed, here there is no showing of any connection between the IRS summonses at issue and the church members' stated "apprehension". The church members do not aver that allowing the IRS access to the taxpayers' records will increase the members' risk of harm or apprehension in any way. The affiants simply state that they are apprehensive as a result of the *general* pattern of IRS investigations across the country. Finally, the Supreme Court's associational privacy cases have only protected the confidentiality of membership lists where the members were exposed to the sort of harassment and persecution visited upon NAACP members in the South in *Bates v. Little Rock* and *NAACP v. Alabama, supra.* The mere possibility of an IRS investigation or audit is not the sort of harm which would preclude disclosure of membership lists.[5]

4. The cases at bar do not involve an IRS investigation of a church. The IRS summonses are not directed at church records, but at the records of the individual taxpayers.

5. The taxpayers have found one (somewhat aberrant) case supporting their theory that the mere exposure to possible tax investigations of organization members could warrant quashing

In sum the taxpayers have not raised a genuine issue of material fact; they have not met their burden of making a preliminary factual showing of bad faith, abuse of process, or an illegitimate purpose on the part of the IRS. Therefore, the taxpayers' motions are denied, the government's petitions for enforcement are granted, and the respondents are ordered to comply with the IRS summonses.

IT IS SO ORDERED.

an IRS summons. *U. S. v. Citizens State Bank*, 612 F.2d 1091 (8th Cir. 1980). That case is distinguishable first, because there the intervenor-taxpayer alleged that the records sought by the IRS identified the members of a tax protest organization (thus the risk to the members was specifically related to the enforcement of the IRS summons at issue). Second, the intervenor-taxpayer in the *Citizens State Bank* case submitted affidavits detailing the actual adverse effects of the summons on the group's organizational and fundraising activities (in contrast, here there is nothing in the affidavits to suggest that the IRS summons has had an adverse impact on membership). Third, in the *Citizens State Bank* case there were other indications that the IRS had an impermissible purpose: suppressing citizen opposition to the U.S. tax system.