**Sidney R. BALDWIN, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 80–2008.

United States Court of Appeals, Eighth Circuit.

Submitted May 6, 1981.

Decided May 12, 1981.

---

**6.** *See* text accompanying note 4 *supra.*

Sidney R. Baldwin, St. Paul, Minn., pro se.

John F. Murray, Acting Asst. Atty. Gen., Michael L. Paup, Richard Farber, Jay W. Miller, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

PER CURIAM.

Sidney R. Baldwin appeals from an August 26, 1980, United States Tax Court order which: (1) dismissed Baldwin's deficiency redetermination lawsuit pursuant to Tax Court Rule 104(c)(3)[1] because Baldwin failed to comply with two Tax Court orders which required him to answer interrogatories propounded by the Commissioner and produce certain documents for inspection; and (2) entered an income tax deficiency judgment for the 1977 taxable year against Baldwin in the sum of $5,915.22, plus a penalty tax[2] of $295.76. Because we conclude the Tax Court failed to adequately consider Baldwin's arguments that a first amendment religious privilege precludes discovery of certain information sought by the Commissioner, we vacate the August 26, 1980, order and remand the case to the Tax Court for further proceedings.

The underlying facts are convoluted. Baldwin is a licensed and ordained minister of the Basic Bible Church of America (BBCA) and operated a chapter of that

---

1. Tax Court Rule 104(c)(3) provides in part:

    (c) *Sanctions.* If a party * * * fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 81, 82, 83, 84 or 90, the Court *may* make such orders as to the failure as are just, and among others the following:

    \*    \*    \*    \*    \*    \*

    (3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, *or dismissing the case or any part thereof,* or rendering a judgment by default against the disobedient party. [Emphasis added.]

2. 26 U.S.C. § 6653(a).

church (The Order of Almighty God) in St. Paul, Minnesota. Baldwin, by his own admission, filed a 1977 Form 1040 Federal Income Tax Return which showed that "all income received for * * * [1977] was turned over to the Basic Bible Church of America pursuant to a vow of poverty executed by [Baldwin] * * *."

St. Paul Internal Revenue Service Agent William T. Gahler asked Baldwin to appear before the IRS in St. Paul on September 27, 1978. Baldwin appeared on that date and produced the organizational and occupational documents of the BBCA. Thereafter, an IRS thirty-day letter, which alleged an income tax deficiency for 1977, was mailed to Baldwin. After Baldwin's administrative protests failed to result in settlement, an IRS statutory notice of deficiency was issued on June 4, 1979.

Baldwin filed a petition for deficiency redetermination in the United States Tax Court on August 29, 1979. On November 29, 1979, the Commissioner served Baldwin with four interrogatories [3] and a request for production of documents.[4] Baldwin partially answered the interrogatories but objected to most portions as irrelevant, violative of 26 U.S.C. § 7605 [5] or protected by a First Amendment religious privilege. He refused to produce any of the requested documents.

On January 16, 1980, the Commissioner filed a motion in the Tax Court which sought to compel Baldwin to answer the interrogatories or impose sanctions under Tax Court Rule 104(c).[6] A similar motion to compel production of documents or impose sanctions was filed by the Commissioner on that same date. On February 16,

---

**3.** The Commissioner's interrogatories read as follows:

> 1. A list of all newspaper or other publication solicitation of members for the Order of Almighty God, Chapter No. 7909, during the years 1975 through 1977.
> 2. The names of all banks, savings and loans, or other financial institutions where you had accounts. Specify the type of account and its identification number.
> 3. The names of all banks, savings and loans, or other financial institutions where Order of Almighty God, Chapter No. 7909, had any accounts. Specify the type of accounts and its identification number.
> 4. List the dates of all services of the Order of Almighty God, Chapter No. 7909, and *the names and current addresses of all persons attending each of these services.* [Emphasis added.]

**4.** The Commissioner's request for document production read as follows:

> 1. *All records pertaining to cash receipts and disbursements,* including, but not limited to, bank accounts, deposit slips, cancelled checks, *records of contributions to Basic Bible Church of America, or the Order of Almighty God, Chapter No. 7909,* records of contributions by Basic Bible Church of America, or the Order of Almighty God, Chapter No. 7909, sales of merchandise, payroll records, and records related to the payments of employment or social security taxes, for the period beginning on January 1, 1975, through the year ended December 31, 1977.
> 2. All balance sheets and other statements of financial condition covering the period from January 1, 1975, through the year ended December 31, 1977, including but not

limited to those showing the assets and liabilities of Basic Bible Church of America, or the Order of Almighty God, Chapter No. 7909.
> 3. All cancelled checks, receipts, or other documents evidencing payment of any money to you by Basic Bible Church of America, or the Order of Almighty God, Chapter No. 7909. [Emphasis added.]

**5.** 26 U.S.C.A. § 7605(c) (Supp.1980) provides:

> (c) *Restriction on examination of churches.*—No examination of the books of account of a church or convention or association of churches shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in activities which may be subject to tax under part III of subchapter F of chapter 1 of this title (sec. 511 and following, relating to taxation of business income of exempt organizations) unless the Secretary (such officer being no lower than a principal internal revenue officer for an internal revenue region) believes that such organization may be so engaged and so notifies the organization in advance of the examination. No examination of the religious activities of such an organization shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches, and no examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

**6.** Tax Court Rule 104(c) is partially reproduced in n.1, *supra.*

1980, Baldwin mailed—from St. Paul—a motion in opposition which asserted the Commissioner's requests for information were overbroad and violative of the First Amendment; he also requested a change in hearing location from Washington, D. C., to St. Paul. A hearing on the Commissioner's motions to compel discovery or impose sanctions was scheduled before the Tax Court in Washington, D. C., for February 20, 1980. After a hearing was duly held on February 20, 1980, a special trial judge entered an order which: (1) denied Baldwin's request to change the hearing location from Washington, D. C., to St. Paul;[7] and (2) ordered Baldwin to furnish "proper and adequate answers" to the Commissioner's interrogatories and produce the requested documents on or before April 21, 1980. The special trial judge did not consider the substance of Baldwin's privilege claims.

When Baldwin did not comply with the special trial judge's order on or before April 21, 1980, the Commissioner filed a second motion on April 29, 1980, to compel discovery or impose sanctions pursuant to Tax Court Rule 104(c). A hearing on this second motion to compel was scheduled in Washington for June 4, 1980. Baldwin again requested that the hearing be held in St. Paul rather than Washington, D.C.[8]

On June 4, 1980, the special trial judge ordered Baldwin to answer the Commissioner's interrogatories and produce the requested documents on or before August 4, 1980. Alternatively, the June 4, 1980, order gave Baldwin an option to appear in Washington on August 20, 1980, to show cause why sanctions should not be imposed against him. The record reveals that Baldwin's claims of religious privilege in opposition to the Commissioner's discovery requests were not seriously considered.

On August 26, 1980, the Tax Court's chief judge dismissed Baldwin's deficiency redetermination lawsuit pursuant to Tax Court Rule 104(c)(3) and entered a deficiency judgment against him in the total sum of $6,210.98. Baldwin timely appealed.

Baldwin phrases the issue on appeal as whether he can properly be compelled to produce information which is irrelevant to the issues raised in his deficiency redetermination petition and which is protected by the First Amendment. In essence, Baldwin argues that: (1) 26 U.S.C. § 7605(c) bars the Commissioner from discovering much of the information sought; (2) he can prove that his church is an organization exempt from taxation without disclosing confidential membership lists and sources of financial donations, information which he asserts is privileged under the First Amendment;[9] (3) since 1977 is the only disputed year, the Commissioner's request for 1975 and 1976 information is unnecessary; and (4) the Commissioner has not shown a cogent and compelling need for disclosure which justifies infringement of his First Amendment rights, citing *United States v. Citizens State Bank*, 612 F.2d 1091 (8th Cir. 1980).

The Commissioner responds that neither the First Amendment nor 26 U.S.C. § 7605(c) justifies Baldwin's failure to comply with the Tax Court's order compelling discovery and, accordingly, the Tax Court's dismissal of Baldwin's deficiency redetermination action was not an abuse of discretion.

"The basic premise underlying the discovery procedures of the Tax Court Rules like those of the Federal Rules of Procedure, is that any matter which is relevant to the subject matter of a pending case is subject to discovery unless it is privileged."

---

7. The February 20, 1980, Tax Court Order erroneously states that Baldwin's opposition to the Commissioner's discovery requests and his request for a change of hearing location were filed in the Tax Court on February 20, 1980. The transcript of the February 20, 1980, hearing reveals that both motions were received by the Tax Court on February 19, 1980; the special trial judge ordered both motions to be filed on February 20, 1980.

8. This motion was filed in the Tax Court on May 28, 1980, and summarily denied on May 30, 1980.

9. Baldwin's "basic claim" is that discovery of membership and contributors lists will discourage persons from joining or contributing to BBCA, in violation of the First Amendment.

*Ryan v. Commissioner,* 568 F.2d 531, 538 (7th Cir. 1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). The Tax Court may, in the interest of justice, enter a protective order to protect a party from annoyance, embarrassment, oppression or undue burden or expense. *Id.* However, the two basic limitations to the scope of discovery under the Tax Court Rules, like the Federal Rules of Civil Procedure, are privilege and relevancy. *Id. See also* Tax Court Rule 70(b) (which permits discovery of any matter which is relevant and not privileged).

■ Under Tax Court Rule 104(c)(3), the Tax Court *may* dismiss an action where the taxpayer fails to comply with an order to participate in discovery. *Eisele v. Commissioner,* 580 F.2d 805 (5th Cir. 1978) (per curiam) (taxpayer failed to answer interrogatories, claiming Fifth Amendment privilege); *Coomes v. Commissioner,* 572 F.2d 554 (6th Cir.), *cert. denied,* 439 U.S. 854, 99 S.Ct. 164, 58 L.Ed.2d 160 (1978) (court upheld the Tax Court's dismissal of a church director's deficiency redetermination lawsuit because the church director twice failed to comply with a subpoena duces tecum; however, court did not expressly mention any Tax Court Rules).

26 U.S.C. § 7605(c) (restriction on examination of churches)[10] is not, as such, a formal part of the Tax Court's discovery rules. Section 7605(c)'s terms essentially limit the scope of IRS summonses, and our research failed to locate a decision which applied that provision in the context of the Tax Court discovery rules.

It is not surprising, therefore, that the Commissioner argues that § 7605(c) limits only the scope of an IRS administrative summons and has no application to a request for discovery under the Tax Court Rules. The Commissioner further maintains that even if § 7605(c) applies to Tax Court discovery rules, it would not preclude disclosure of the information sought from Baldwin. We cannot flatly agree with either contention.

Although § 7605(c) expressly applies to IRS summons cases and not cases involving discovery under the Tax Court Rules, the underlying issue in both situations is the same: whether disclosure of certain information will infringe upon a church's First Amendment freedoms. The First Amendment provides protection, for example, for associational freedom and free exercise of religion. This Court recently set forth the principles of associational freedom to be applied in IRS summons cases. *See United States v. Citizens State Bank, supra.* We conclude that those principles are equally applicable in the instant context.

In *Citizens State Bank,* we recognized that the significant right of freedom of association grounded in the First Amendment may limit IRS access to, among other things, an organization's membership and contributor lists. *United States v. Citizens State Bank, supra,* 612 F.2d at 1093–1095. Once the taxpayer makes a prima facie showing that the information requested arguably infringes upon the organization's First Amendment rights, the burden shifts to the government to make an appropriate showing of need for material. *Id.* at 1094. We reiterated that disclosure of a group's membership lists can be compelled only by a showing that there is a rational connection between such disclosure and a legitimate governmental end, and that the governmental interest in the disclosure is both cogent and compelling. *Id.* (quoting *Pollard v. Roberts,* 283 F.Supp. 248, 256–257 (E.D. Ark.), *aff'd,* 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968) (per curiam)).

We further noted:

It may be that the government can make the showing needed to justify the broad summons issued in this case. If it cannot do so at the time, it seems probable that it can issue a more limited summons that would serve the government's present needs without divulging those portions of the bank records that identify * * * [the organization's] members and contributors. For example, the IRS could first seek bank statements and other

---

**10.** *See* n.5, *supra.*

"blind" records indicating the status of the * * * [organization's] account. If more information is needed to obtain a true picture of * * * [the taxpayer's] fi-nances, subsequent summonses could be issued, seeking increasingly detailed information. If discrepancies are discovered, it may even be possible for the IRS to make the "cogent and compelling" showing needed to obtain the entire set of bank records, including the documents identifying * * * [the organization's] members.

*Id.*, 612 F.2d at 1094.

In the instant case, Baldwin objected to the Commissioner's discovery requests in part because he believed disclosure of membership and contributor lists would discourage others from joining the BBCA. The Tax Court failed to analyze Baldwin's claims of First Amendment privilege, perhaps because Baldwin was not present or represented at either of the two hearings in Washington, D. C., on the Commissioner's motions to compel discovery. Although Baldwin submitted written motions in opposition, the Tax Court gave short shrift to those pro se documents. A pro se litigant, of course, is bound by the Tax Court Rules. Nevertheless, a fair reading of the hearing transcripts and the Tax Court's three orders of February 20, 1980, June 4, 1980, and August 26, 1980, indicates that Baldwin's constitutional objections were given only cursory consideration.

Recent decisions illustrate the courts' growing concern that overbroad IRS informational probes may infringe upon constitutionally protected rights. *See United States v. Life Science Church*, 636 F.2d 221 (8th Cir. 1980) (per curiam) (this Court recognized that an IRS summons may have been so broad as to infringe upon the First Amendment rights of the Life Science Church); *United States v. Holmes*, 614 F.2d 985, 987–990 (5th Cir. 1980) (per curiam) (Court held an IRS summons issued against a church was too broad; Court also discussed the standards for application where a taxpayer objects to disclosure on First Amendment establishment or free exercise

of religion grounds). *But cf. United States v. Freedom Church*, 613 F.2d 316, 319–322 (1st Cir. 1979) (in an IRS summons case, Court rejected, on the facts, taxpayers' arguments that disclosure of church membership and contributor lists was not relevant and violated the First Amendment).

▮ Here, we are not convinced that the Commissioner's discovery requests for membership and contributor lists were necessary or justified. In our view, Baldwin made a prima facie showing that full compliance with the Commissioner's discovery requests would result in an arguable infringement on BBCA's First Amendment associational freedoms. Therefore, the Tax Court should have analyzed Baldwin's privilege claims under the standards set forth in *United States v. Citizens State Bank, supra*, 612 F.2d at 1093–1095. Because it failed to do so, we vacate the Tax Court's August 26, 1980, order and remand for plenary consideration of Baldwin's objections to the Commissioner's discovery requests.

We also conclude, however, that the Commissioner's discovery requests for information other than membership and contributor lists were reasonable. Upon remand, therefore, Baldwin shall comply with the Commissioner's discovery requests as set forth in notes 3 and 4, *supra*, except for those portions to which we added emphasis. Discovery of membership and contributor lists, as discussed earlier, would be permissible only if the standards in *Citizens State Bank* could be satisfied.

Vacated and remanded.

It is so ordered.