**William E. BROCK, Secretary of Labor; U.S. Department of Labor, Plaintiffs–Appellees,**

v.

**LOCAL 375, PLUMBERS INTERNATIONAL UNION OF AMERICA, AFL–CIO; J.L. Arsenault; Yvonne Cox; Political, Educational, Legislative, Charity and Defense Fund of Plumbers Local Union 375, aka Voluntary Fund, Defendants–Appellants.**

No. 87–4084.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1988.

Decided Oct. 28, 1988.

---

Robert A. Royce, Jermain, Dunnagan & Owens, P.C., Anchorage, Alaska, for defendants-appellants.

Robert D. Kamenshine and Frank A. Rosenfeld, U.S. Dept. of Justice, Civil Div., Washington, D.C., for plaintiffs-appellees.

Before KOZINSKI, NOONAN and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Appellants Plumbers Local 375 ("Union"), J.L. Arsenault, Yvonne Cox, and the Political, Educational, Legislative, Charity and Defense Fund ("Voluntary Fund") appeal the district court's order enforcing

three subpoenas issued by the Secretary of Labor. The subpoenas seek information relating to the Voluntary Fund. The district court found that the Voluntary Fund was not an association entitled to first amendment rights. Appellants argue that the district court erred in refusing to consider their first amendment claims. We agree with appellants, and therefore reverse.

## FACTS

The Secretary of Labor initiated a compliance audit of Local 375 pursuant to the Labor–Management Reporting and Disclosure Procedure Act of 1959, 29 U.S.C. §§ 401–531 (the "Act"). The Act empowers the Secretary to investigate any person he believes is violating, or is about to violate, any of the Act's provisions. 29 U.S.C. § 521(a).

The Voluntary Fund was established in 1974 or 1975 by the business manager for the Union. The Fund is currently administered by appellant J.L. Arsenault, the secretary-treasurer for the Union. The bookkeeper for the Fund is appellant Yvonne Cox, who is also the bookkeeper for the Union. The Fund is used for scholarships, and charitable and political contributions.

The Voluntary Fund raises money through raffles and voluntary contributions by the Union's members. The pledge cards for the Fund state that the Union is not related to the Fund. Arsenault maintains that most of the Fund's contributions come from non-members and that the Voluntary Fund is an organization separate from the Union.

The Department of Labor audit of the Union revealed two interest-free loans made by the Union to the Voluntary Fund, and two reimbursements by the Union to the Fund, for money the Fund had advanced for the Union's benefit. In January, 1981, the Union lent the Voluntary Fund $10,000. The Fund repaid the loan in November of 1981, without interest. In February, 1981, the Union lent the Voluntary Fund an additional $10,000, which the Fund repaid in February of 1983, again without interest. In addition to these two

loans, the Union reimbursed the Fund $6,000 for a deposit the Fund had made on behalf of the Union for a fishing trip hosted by the Union. The Union also reimbursed the Fund $500 for money the Fund had advanced for a relief map for the Governor of Alaska.

The Department of Labor discovered a discrepancy in the way the Fund identifies itself. The Voluntary Fund did not register as a "group" with the Alaska Public Offices Commission. The Fund claimed it was a "labor organization" and did not qualify as a "group" under Alaska law. Furthermore, the Voluntary Fund does not file reports with the Department of Labor because it claims it is not a "union" within the meaning of the Act.

Appellants refused to provide further information on the Voluntary Fund. The Secretary of Labor served subpoenas ad testificandum on Arsenault and Cox, and a subpoena duces tecum on Arsenault. The subpoena duces tecum sought production of "all records pertaining to the fund for the period from January 1, 1982, to the present." Arsenault and Cox refused to comply with the subpoenas. The Secretary of Labor petitioned the district court to enforce the subpoenas, and enforcement was ordered. This appeal followed.

## ANALYSIS

■ The Secretary of Labor is empowered to issue subpoenas whenever he believes the Act is being violated. 29 U.S.C. § 521(a). The investigatory powers of administrative agencies are analogous to the grand jury, and an agency can investigate on the mere suspicion the law is being violated. *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950); *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1429 (9th Cir.1983); *Casey v. Federal Trade Comm'n*, 578 F.2d 793, 799 (9th Cir.1978); *Federal Maritime Comm'n v. Port of Seattle*, 521 F.2d 431, 435 (9th Cir.1975). The Ninth Circuit standard of judicial scrutiny in an agency subpoena enforcement proceeding focuses on: (1)

whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the information sought is relevant and material to the investigation. *EPA v. Alyeska Pipeline Service Co.*, 836 F.2d 443, 446 (9th Cir.1988); *EEOC v. Children's Hosp. Med. Ctr. of N. Cal.*, 719 F.2d at 1428 (citing *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 508–09, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943)).

Appellants do not contest the government's authority to investigate, nor do they dispute the procedural requirements for the subpoenas. Rather, appellants challenge the information sought by the government. Appellants claim that compelled disclosure of certain of this material will "chill" the first amendment rights of free association of the Fund's members. The district court refused to consider this argument. Instead, it ruled that the Fund was not a separate association and, therefore, could not assert first amendment rights.

We find the question whether the Fund is an association entitled to first amendment rights to be one of law. We review questions of law de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir. 1984), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The district court characterized the Fund as "nothing but a checking account" and "nothing more than a bank account of the Union...." In reaching this conclusion, the district court relied partly on "the total absence of any documentation of the existence of any form of organization authorizing creation or operation of the voluntary fund." The district court's emphasis on organizational structure is misplaced. It does not matter whether the Fund is totally independent from the Union, as appellants claim, or merely a bank account of the Union, as the district court found. If the Fund is sufficiently independent of the Union to be considered in its own right, it can attempt to show infringement of its members' first amendment rights. If the Fund is merely an extension of the Union,

then the Union can make the attempt. Associational rights are implicated either way.

■ The true focus should be on the activities engaged in by the Fund. "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 3252, 82 L.Ed.2d 462 (1984). *See also Abood v. Detroit Board of Education*, 431 U.S. 209, 231 and n. 28, 97 S.Ct. 1782, 1797 and n. 28, 52 L.Ed.2d 261 (1977), *reh'g denied*, 433 U.S. 915, 97 S.Ct. 2989, 53 L.Ed.2d 1102 (1977); *Local 1814, Int'l Longshoremen's Ass'n v. Waterfront Com'n of New York Harbor*, 667 F.2d 267, 270 (2nd Cir.1981).

According to the affidavit of J.L. Arsenault, the Fund's administrator, the Fund has been used for "scholarships, charitable contributions, and political purposes." These are precisely the types of activities that benefit from first amendment protection. The right of the Fund's members to join together for the advancement of their beliefs and ideas necessarily involves the right to "pool money through contributions...." *Buckley v. Valeo*, 424 U.S. 1, 65, 96 S.Ct. 612, 657, 46 L.Ed.2d 659 (1976). Disclosure of the identities of the Fund's members or contributors may adversely affect the ability of these persons "to pursue their collective effort to foster beliefs which they admittedly have the right to advocate...." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462–63, 78 S.Ct. 1163, 1172, 2 L.Ed.2d 1488 (1958). *See also Local 1814*, 667 F.2d at 270.

We conclude that the Fund, either independently or as an arm of the Union, is an association to which first amendment rights attach.

■ Our disposition of this issue, however, does not mean that appellants can escape lawful governmental investigation. Appellants must demonstrate to the district court, on remand, a "prima facie showing of arguable first amendment infringement...." *United States v. Trader's*

*State Bank,* 695 F.2d 1132, 1133 (9th Cir. 1983). This *prima facie* showing requires appellants to demonstrate that enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or "chilling" of, the members' associational rights.[1]  *O'Neal v. United States,* 601 F.Supp. 874, 878 (N.D. Ind.1985).

If appellants can make the necessary *prima facie* showing, the evidentiary burden will then shift to the government. *United States v. Traders State Bank,* 695 F.2d at 1133. The Supreme Court has recognized that some governmental interests are sufficiently compelling to outweigh the infringement of first amendment rights, "particularly when the 'free functioning of our national institutions' is involved." *Buckley v. Valeo,* 424 U.S. at 66, 96 S.Ct. at 657 (quoting *Communist Party v. Subversive Activities Control Bd.,* 367 U.S. 1, 97, 81 S.Ct. 1357, 1411, 6 L.Ed.2d 625 (1961)). Thus, if the government can demonstrate that the information sought through the subpoenas is rationally related to a compelling governmental interest, *Buckley v. Valeo,* 424 U.S. at 64, 96 S.Ct. at 656; *United States v. Trader's State Bank,* 695 F.2d at 1133, the district court will then have to determine if the government's disclosure requirements are the "least restrictive means" of obtaining the desired information. *Buckley v. Valeo,* 424 U.S. at 68, 96 S.Ct. at 658. ["The government's] purpose cannot be pursued by means that broadly stifle fundamental

personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960) (footnote omitted). *See also Pollard v. Roberts,* 283 F.Supp. 248, 257 (E.D.Ark.1968), *aff'd,* 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968).

## CONCLUSION

Whether it's the Fund or the Union, an association exists which is capable of asserting first amendment rights. On remand, the district court must determine whether a *prima facie* case is made to assert these rights, and if so whether the government can show that enforcement of the subpoenas is rationally related to a compelling governmental interest. If the government makes this showing, the district court will then have to determine the least restrictive means by which the information sought can be provided to the government so as not to "stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker,* 364 U.S. at 488, 81 S.Ct. at 252.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

**1.** Many courts have grappled with the sufficiency of such a showing. *O'Neal v. United States,* 601 F.Supp. 874, 879–80 (N.D.Ind.1985); *St. German of Alaska E. Orthodox Cath. Ch. v. United States,* 840 F.2d 1087, 1093 (2nd Cir.1988); *Local 1814 Int'l Longshoremen's Ass'n v. Waterfront Com'n of New York Harbor,* 667 F.2d 267, 271 (2nd Cir.1981); *United States v. Citizens State Bank,* 612 F.2d 1091, 1094 (8th Cir.1980); *In re Grand Jury Proceeding,* 842 F.2d 1229, 1235–36 (11th Cir.1988). A factor emphasized in each of those decisions is the need for objective and articulable facts, which go beyond broad allegations or subjective fears. The Supreme Court, in *Buckley v. Valeo,* seemed to suggest that a merely subjective fear of future

reprisals is an insufficient showing of infringement of associational rights. 424 U.S. at 71–72, 96 S.Ct. at 660. However, the *Buckley* Court also recognized that "unduly strict requirements of proof could impose a heavy burden...." The Court therefore required that the "evidence offered need show only a reasonable probability that the compelled disclosure ... will subject [contributors] to threats, harassment, or reprisals from either Government officials or private parties." *Id.* at 74, 96 S.Ct. at 661. *See also Brown v. Socialist Workers '74 Campaign Committee,* 459 U.S. 87, 93, 103 S.Ct. 416, 421, 74 L.Ed.2d 250 (1982); *In re Grand Jury Proceeding,* 842 F.2d at 1235–36; *O'Neal v. United States,* 601 F.Supp. at 879.