GENERAL COUNCIL ON FINANCE & ADMINISTRA-
TION, UNITED METHODIST CHURCH *v.* CALI-
FORNIA SUPERIOR COURT, SAN DIEGO
COUNTY (BARR ET AL., REAL
PARTIES IN INTEREST)

No. A–200 (78–300).  Decided September 1, 1978

MR. JUSTICE REHNQUIST, Circuit Justice.

The General Council on Finance and Administration of the United Methodist Church requests that proceedings in the Superior Court of the State of California for the County of San Diego, in which it is a defendant, be stayed as to it pending this Court's consideration of its petition for a writ of certiorari.  Applicant, an Illinois not-for-profit corporation, is one of six defendants in a class action seeking, *inter alia*, damages for breach of contract, fraud, and violations of state securities laws arising out of ·the financial collapse of the Pacific Homes Corp., a California nonprofit corporation that operated 14 retirement homes and convalescent hospitals on the west coast.  *Barr* v. *United Methodist Church*, No. 404611 (Cal. Super. Ct., San Diego County, Mar. 20, 1978). Respondent real parties in interest (hereafter respondents), some 1,950 present and former residents of the homes, allege that Pacific Homes was the alter ego, agency, or instrumentality of the United Methodist Church (Methodist Church), applicant, and certain other defendants affiliated with the Methodist Church.  The judgment at issue is the Superior

Court's denial of applicant's motion to quash service of process for lack of *in personam* jurisdiction. That court, in a minute order decision, concluded that applicant was "doing business" in the State of California and, therefore, was subject to the jurisdiction of the California courts. Applicant's petition for a writ of mandate to review the judgment of the Superior Court was denied by the Court of Appeal for the Fourth Appellate District in a one-sentence order, and the California Supreme Court summarily denied applicant's petition for a hearing on the issue. Thereafter, applicant was ordered by the Superior Court to respond to respondents' complaint on or before August 28, 1978. I granted a temporary stay of the proceedings below to permit consideration of a response to the application. *Ante,* p. 1355.

Applicant challenges the Superior Court's order on three grounds. First, citing this Court's decision in *Serbian Eastern Orthodox Diocese* v. *Milivojevich,* 426 U. S. 696 (1976), applicant maintains that the Superior Court violated the First and Fourteenth Amendments in basing its assertion of jurisdiction on respondents' characterization of applicant's role in the structure of the Methodist Church and rejecting contrary testimony of church officials and experts and statements set forth in the Book of Discipline, which contains the constitution and bylaws of the Methodist Church. Applicant's next contention is that use of the "minimum contacts" standard of *International Shoe Co.* v. *Washington,* 326 U. S. 310 (1945), in determining jurisdiction over a nonresident religious organization violates the First and Fourteenth Amendments. Finally, applicant argues that even under the traditional minimum-contacts mode of analysis, its connection with the State of California is too attenuated, under the standards implicit in the Due Process Clause of the Fourteenth Amendment, to justify imposing upon it the burden of a defense in California.

Because the Superior Court's order denied a pretrial motion,

an initial question is whether the judgment below is "final" within the meaning of 28 U. S. C. § 1257, which permits this Court to review only "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had . . . ." Applicant argues that it can preserve its jurisdictional argument only by suffering a default judgment, since under California law in order to defend on the merits it must appear generally and, accordingly, waive its objection to *in personam* jurisdiction. See *McCorkle* v. *Los Angeles,* 70 Cal. 2d 252, 449 P. 2d 453 (1969). It therefore finds itself between Scylla and Charybdis, and, citing *Shaffer* v. *Heitner,* 433 U. S. 186 (1977), asserts that under such circumstances the Superior Court's judgment is final. In *Shaffer,* this Court, taking a "pragmatic approach" to the question of finality, held that a Delaware court's pretrial decision to assert jurisdiction over the defendants was final within the meaning of § 1257 because under Delaware law the defendants' only choices were to incur default judgments or to file general appearances and defend on the merits, thereby submitting themselves to the court's jurisdiction. 433 U. S., at 195–196, n. 12. Respondents contest applicant's interpretation of California procedural law. They claim that a defendant can defend on the merits and still preserve his jurisdictional objections so long as he seeks immediate appellate review of an adverse decision on a motion to quash. See Cal. Civ. Proc. Code Ann. § 418.10 (West 1973). As noted above, applicant did avail itself of this procedure.

If the views of the respective parties are each to be credited, California law may not be clear on this issue, and it certainly is not within my province to resolve their differences with respect to it.* If California procedural law is as applicant

---

*I recognize that in determining whether to grant a stay, Members of this Court may hold differing views on the weight to be accorded any doubt as to the finality of a state-court judgment. See *New York Times Co.* v. *Jascalevich, ante,* p. 1331 (MARSHALL, J., in chambers) ; *New York Times*

describes it, I am convinced that this Court would find the Superior Court's judgment to be "final" within the meaning of § 1257. See *Shaffer* v. *Heitner, supra; Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469 (1975). I need not resolve this issue, however, since I have concluded that even if the Superior Court's order were a final judgment under § 1257, a stay is nonetheless not warranted in this case.

Any intrusion into state-court proceedings at an interlocutory stage must be carefully considered and will be granted only upon a showing of compelling necessity. *Bateman* v. *Arizona,* 429 U. S. 1302, 1305 (1976) (REHNQUIST, J., in chambers). Those proceedings are presumptively valid. See *Whalen* v. *Roe,* 423 U. S. 1313, 1316 (1975) (MARSHALL, J., in chambers). A party seeking a stay of a state-court judgment or proceeding must first demonstrate that there is a reasonable probability that four Justices will consider the issues sufficiently meritorious to vote to grant certiorari or note probable jurisdiction. *Bateman* v. *Arizona, supra,* at 1305. Applicant has failed to clear this first hurdle.

In my view, applicant plainly is wrong when it asserts that the First and Fourteenth Amendments prevent a civil court from independently examining, and making the ultimate decision regarding, the structure and actual operation of a hierarchical church and its constituent units in an action such as this. There are constitutional limitations on the extent to which a civil court may inquire into and determine matters of ecclesiastical cognizance and polity in adjudicating intrachurch disputes. See *Serbian Eastern Orthodox Diocese* v. *Milivojevich.* But this Court never has suggested that those constraints similarly apply outside the context of such intraorganization disputes. Thus, *Serbian Eastern Orthodox Diocese* and the other cases cited by applicant are not in point.

---

*Co.* v. *Jascalevich, ante,* p. 1317 (WHITE, J., in chambers); *Bateman* v. *Arizona,* 429 U. S. 1302, 1306 (1976) (REHNQUIST, J., in chambers). It is not necessary to explore that issue in this case.

Those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. 426 U. S., at 709–710. Such considerations are not applicable to purely secular disputes between third parties and a particular defendant, albeit a religious affiliated organization, in which fraud, breach of contract, and statutory violations are alleged. As the Court stated in another context: "Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public." *Cantwell* v. *Connecticut*, 310 U. S. 296, 306 (1940). Nor is it entirely clear that the Superior Court's determination of the jurisdictional question was based upon its interpretation of Methodist polity; it is equally likely that the court's decision was founded on the related but separate issue of applicant's contacts with the State of California.

Likewise untenable, in my view, is applicant's claim that the First and Fourteenth Amendments somehow forbid resort to traditional minimum-contacts analysis in determining the existence of *in personam* jurisdiction over a defendant that is affiliated with an organized religion. Not surprisingly, applicant has failed to cite any authority in support of this novel proposition.

The only remaining issue presented by applicant is whether the quality and nature of its contacts with the State of California are such that "maintenance of the suit [in the forum state] does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co.* v. *Washington*, 326 U. S., at 316, quoting, *Milliken* v. *Meyer*, 311 U. S. 457, 463 (1940). Such questions generally tend to depend on the particular facts of each case, *Kulko* v. *California Superior Court*, 436 U. S. 84 (1978), and I believe that only a marked departure by a lower court in the application of established law would persuade four Justices to grant certiorari. While

the Superior Court's decision does not purport to resolve all of the factual disputes between the parties, there is no indication that it failed to apply the due process standards enunciated in *International Shoe,* and cases which have followed it, to the circumstances presented, and, therefore, I believe it unlikely that this issue would command the votes necessary for certiorari.

Accordingly, the application for a stay pending review on certiorari is denied. The temporary stay I previously entered is hereby terminated.