**UNITED STATES of America and John DeZelar, Plaintiffs-Appellees,**

v.

**David L. HOLMES, as Bishop and Director of the Miletus Church, Inc., Defendant-Appellant.**

No. 79–3023
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 31, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Lee Boothby, Berrien Springs, Mich., for defendant-appellant.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Charles E. Brookhart, Richard N. Bush, Tax Div., Dept. of Justice, Washington, D. C., for plaintiffs-appellees.

Before GODBOLD, REAVLEY and ANDERSON, Circuit Judges.

PER CURIAM:

David Holmes, as bishop and director of the Miletus Church ("Church"), appeals from an order of the district court, entered pursuant to 26 U.S.C. § 7604(a) (1976).[1] The order commanded him to appear before an Internal Revenue Service ("IRS") agent and to produce all books and records requested in a previous IRS summons issued under authority of 26 U.S.C. § 7602 (1976).[2] Holmes discharges three volleys: the

---

1. § 7604. Enforcement of summons

(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

2. § 7602. Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

government failed to establish the requisite predicate for the breadth of the summons; compelled disclosure of the most sensitive church documents, in determining the religious nature of the church, involves an impermissible intervention into internal church affairs as well as an unconstitutional entanglement of Church with State; and the order results in an inhibition of the free exercise of sectarian belief.

The summons at issue[3] was spawned by an IRS investigation of the tax liability of the Church for the years 1975 through 1977. The Regional Commissioner of the IRS notified the Church of the pending investigation into its current tax exempt status and its classification as an organization to which deductible contributions can be made under section 170(b)(1)(A)(i) of the Internal Revenue Code. The summons issued when Holmes refused to supply the requested information. After Holmes notified the IRS of his intent not to comply with the summons, the government applied to the district court for an order of enforcement. Holmes' objections to the resulting judicial directive brings it before us.

### A. Breadth of the Summons.

▉ At this point in the IRS investigation, there has been no referral to the Department of Justice for possible criminal prosecution. At a minimum,[4] therefore, we look to whether the summons was issued in good faith, as that test was formulated in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964), to determine whether the summons should have been enforced. The IRS must show that: (1) the investigation will be conducted

---

**3.** The documents requested span fourteen numbered paragraphs in the summons.

1. All records pertaining to cash receipts and disbursements, including but not limited to, bank accounts, deposit slips, cancelled checks, records of contributions to The Miletus Church, Inc., records of contributions by The Miletus Church, Inc., sales of merchandise, payroll records, and records related to the payment of employment or social security taxes, for the period beginning April 9, 1975 through the year ended December 31, 1977.

2. All balance sheets and other statements of financial condition covering the period from April 9, 1975 through the year ended December 31, 1977, including but not limited to those showing the assets and liabilities of The Miletus Church, Inc.

3. All documents related to the organizational structure of The Miletus Church, Inc. since the original Articles of Incorporation, charter, bylaws were issued, including any amendments made thereto.

4. All correspondence files for the period April 9, 1975 through thee [sic] year ended December 31, 1977.

5. All records of the names and addresses of persons who are or have been officers, directors, trustees, or ministers of The Miletus Church, Inc. at any time during the period April 9, 1975 through December 31, 1977.

6. All minutes of any meetings held by the above officers, directors, trustees, or ministers of The Miletus Church, Inc. during the period April 9, 1975 through the year ended December 31, 1977.

7. One sample of each brochure, phamphlet [sic], handout, program or other literature pertaining to The Miletus Church, Inc.

8. All records reflecting the names of any employees, associates or ministers of The Miletus Church, Inc., particularly any records reflecting the names of the individuals who have been presented credentials of ministry, certificates of ordination, diplomas, or similar statements of recognition by The Miletus Church, Inc.

9. All records reflecting the names of any other organizations that have been chartered as churches or integrated auxiliaries by The Miletus Church, Inc. or that have been affiliated with The Miletus Church, Inc. at any time during the period April 9, 1975 through the year ended December 31, 1977.

10. Documents reflecting any sacerdotal functions performed by any person representing The Miletus Church, Inc.

11. All documents reflecting the principles, creeds, precepts, doctrines, practices, and disciplines espoused by The Miletus Church, Inc.

12. All documents reflecting any prerequisites or actions necessary for membership in an ordination by The Miletus Church, Inc.

13. All documents reflecting any vows of poverty that have been submitted to The Miletus Church, Inc. by any person during the period April 9, 1975 through the year ended December 31, 1977.

14. All documents reflecting any assignment of income to The Miletus Church, Inc., by any person during the period April 9, 1975 through the year ended December 31, 1977.

**4.** *United States v. LaSalle National Bank*, 437 U.S. 298, 318 n. 20, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978).

in pursuit of a legitimate purpose; (2) the inquiry may be relevant to the purpose; (3) the IRS is not currently in possession of the information sought; and (4) all administrative steps required by the Code have been followed. *Accord United States v. LaSalle National Bank*, 437 U.S. 298, 313–14, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978). Once the IRS establishes a prima facie case for enforcement, the burden shifts to the taxpayer to show that enforcement would be an abuse of the court's process. *Powell, supra*, 379 U.S. at 58, 85 S.Ct. at 255.

There can be no quibbling with the fact that a valid purpose was established. The IRS seeks to examine the nature of the Miletus Church to ensure that it is entitled to continued tax exempt status, that it has acquired no unrelated business income, and that it qualifies as an organization to which tax deductible contributions may be made. Nor has Holmes suggested that the government possesses the requested information. Finally, the district court specifically found that the IRS complied with all applicable statutes, rules, and regulations. That finding is not clearly erroneous.

The second prong of the *Powell* test was pruned back by Congress in 1969, in regard to examination of churches, when it added subsection (c) to 26 U.S.C. § 7605.[5] That provision limits the inquiry into the religious activities and books of account of churches "to the extent necessary" to ensure that the organization is a church and to determine the amount of tax owing. The "extent necessary" syntax is certainly more restrictive than the "may be relevant" language in the second tier of *Powell*. Par-

enthetically, it is noted that the trial court made no finding to the effect that these documents are necessary to make a determination as to the status of the Miletus Church or the amount of tax owing. *Cf. United States v. Greenleaf*, 546 F.2d 123, 128–29 (5th Cir. 1977) (such a factual determination is reviewed under the clearly erroneous test).

■ We hold the summons to be too far-reaching. The documents sought include *all* documents relating to the organizational structure of the church since its inception; *all* correspondence files for the period between April of 1975 and January of 1978; the minutes of *all* meetings of the officers, directors, trustees or *ministers*, during this same interval; and a sample of *every* piece of literature pertaining to the Church.[6] This sample from the summons amply demonstrates that it sweeps too wide. It should not have been enforced in its present scope. *See United States v. Bisceglia*, 420 U.S. 141, 146, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975); *United States v. Coopers & Lybrand*, 550 F.2d 615 (10th Cir. 1977); *United States v. Matras*, 487 F.2d 1271 (8th Cir. 1973); *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973).

The option of paring the summons to a reasonable scope and affirming the district court's enforcement order, as curtailed, is not available to us because the date for Holmes' compliance has passed without his cooperation. We vacate the order of enforcement because it countenances a summons of impermissible scope.

---

5. (c) Restriction on examination of churches.—No examination of the books of account of a church or convention or association of churches shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in activities which may be subject to tax under part III of subchapter F of chapter 1 of this title (sec. 511 and following, relating to taxation of business income of exempt organizations) unless the Secretary (such officer being no lower than a principal internal revenue officer for an internal revenue region)

believes that such organization may be so engaged and so notifies the organization in advance of the examination. No examination of the religious activities of such an organization shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches, and no examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title.

6. *See* note 3, *supra*.

## B. *The First Amendment.*

Ordinarily we should refrain from constitutional adjudication where statutory interpretation or application will suffice. *Wolston v. Reader's Digest Ass'n, Inc.,* —— U.S. ——, ——, 99 S.Ct. 2701, 2704 n. 2, 61 L.Ed.2d 450 (1979); *New York City Transit Authority v. Beazer,* 440 U.S. 568, 582, 99 S.Ct. 1355, 1364, 59 L.Ed.2d 587 (1979). However, the likelihood that the First Amendment plaint will be voiced to a summons which has been narrowed within the statutory pale, and the fact that the issue has been fully briefed by both parties, leads us to provide a constitutional compass. *Cf. Murphy v. Inexco Oil Co.,* 611 F.2d 570, 573 (5th Cir. 1980) (guidance on statutory issue).

■■■ A defense against disclosure based upon religious objections can find First Amendment support only if the disclosure either serves to establish religion or impedes the free exercise of sectarian conviction. U.S. Const. Amend. 1. Government action can violate the establishment clause not only by intentionally establishing, sponsoring, or supporting religion, but also if the end result is an excessive government entanglement with religion. *Walz v. Tax Commissioner,* 397 U.S. 664, 674, 90 S.Ct. 1409, 1414, 25 L.Ed.2d 697 (1970). Plaintiff here phrases one of his objections to disclosure in terms of the "excessive entanglement" it creates between Church and State. Despite this language, plaintiff does not raise an establishment clause challenge to the administration of the tax statute.[7] Rather, the essence of plaintiff's claim is that the government subpoena is an unwarranted invasion of internal church affairs. Conceptually this argument is grounded in the free exercise clause and not the establishment clause. *Cf. Surinach v. Pesquera de Busquets,* 604 F.2d 73, 79 n. 6 (1st Cir. 1979) (free exercise clause implicated when order requiring disclosure of information regarding costs of operation of sectarian schools attacked on grounds of excessive entanglement).

■■ Free exercise of religion, as it is encapsulated in the First Amendment, embraces two concepts—freedom to believe and freedom to act. The first is absolute, but the second remains subject to regulation for the protection of society. *Cantwell v. Connecticut,* 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). We are not concerned here with the former; Holmes and other congregation members remain unimpeded in the cerebral sphere. The sole issue is whether the Church may refrain from producing documents under a narrowed court order. There is no doubt that this constitutes conduct.

The Supreme Court has employed a two part balancing test in determining when such conduct is protected by the free exercise clause. First, plaintiff must show a burden on the exercise of his religion by the law under review. Second, the burden will be upheld only if the government interest outweighs the degree of impairment of free exercise rights. *See Wisconsin v. Yoder,* 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963).

■■■ Requiring plaintiff to comply with a properly narrowed summons in order to show its entitlement to tax exempt status results in only an incidental burden upon his free exercise of religion. *Cf. Hearde v. Commissioner,* 421 F.2d 846 (9th Cir. 1970) (required disclosure of charitable donation beneficiaries to be entitled to deduction results in only incidental burden on religion); *see generally Johnson v. Robinson,* 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Plaintiff is free to espouse his religious doctrine and to solicit support for his cause. He simply must allow the government access to information in order to determine whether the church remains within the cri-

---

7. A potential "entanglement" problem with the religious tax exemption would be that the government aid requires such substantial reporting and regulation that the program as administered should be forbidden by the estab-lishment clause. *See Walz v. Tax Commissioner,* 397 U.S. at 664–65, 90 S.Ct. at 1409–10. Plaintiff here does not want to end the tax exemptions but merely to enjoy them without supervision.

teria for a lighter tax burden. The church may, of course, forego the exemption and limit IRS access to church records.[8]

■ Balanced against the incidental burden on church religious activities is the substantial government interest in maintaining the integrity of its fiscal policies. *United States v. Jordan*, 508 F.2d 750, 752 (7th Cir. 1974), *cert. denied*, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 62 (1975), *quoting United States v. Egan*, 459 F.2d 997, 998 (2d Cir.), *cert. denied*, 409 U.S. 875, 93 S.Ct. 123, 34 L.Ed.2d 127 (1972). This interest is sufficiently compelling to justify any incidental infringement of plaintiff's First Amendment rights. *See Christian Echoes National Ministry, Inc. v. United States*, 470 F.2d 849, 857 (10th Cir. 1972).

VACATED.

---

8. Characterization of tax exempt status as a "benefit" or "privilege" is not in itself justification for imposition of conditions on religious exercise. *Sherbert v. Verner*, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965, 971 (1963). The proper test is whether the purpose or effect of a law is to impede the observance of one or all religions, or is to discriminate invidiously between religions. *Braunfield v. Brown*, 366 U.S. 599, 607, 81 S.Ct. 1144, 1148, 6 L.Ed.2d 563 (1961).