Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

CENTRAL BAPTIST CHURCH, VICTORIA, d/b/a Central Day Care Center, Defendant.

Civ. A. No. V-80-15.

United States District Court, S.D. Texas, Victoria Division.

Jan. 29, 1982.

Barbara G. Heptig, U.S. Dept. of Labor, Dallas, Tex., for plaintiff.

Tedd N. Williams, Attorney in Charge, Gibbs & Craze, Cleveland, Ohio, Clyde Jackson, Jr., Local Co-counsel, Corpus Christi, Tex., for defendant.

ORDER

KAZEN, District Judge.

Plaintiff United States Secretary of Labor brings this action to enjoin Defendant,

Central Baptist Church, Victoria, Texas, d/b/a Central Day Care Center, from violating the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 et seq. Specifically, Plaintiff seeks to restrain the Defendant from withholding payment of minimum wages and overtime compensation allegedly due to Central Day Care Center employees. Pending before the Court is Defendant's motion for a protective order, Fed.R.Civ.P. Rule 26(c)(1), directing that Plaintiff's first set of interrogatories not be answered. As grounds for said order, Defendant would show that response to the interrogatories would violate Defendant's rights established under the religion clauses of the First Amendment to the United States Constitution.

Specifically, Defendant alleges that its operation of a day care center is an integral part of the ministry of the church itself and therefore, the subjecting of that center to minimum wage laws violates both the free exercise and the establishment clauses of the First Amendment. Both sides have submitted excellent briefs, defining their respective positions with skill and force. From those briefs and its own independent research, the Court reaches the following conclusions. First, there is apparently no explicit exemption in the F.L.S.A. for churches or church-related schools. The Court can find none and Defendant has not suggested any. Indeed, the Act specifically defines a covered enterprise to include a pre-school, even if it be private and operated on a non-profit basis. 29 U.S.C. § 203(s)(5). Thus, this case cannot be resolved simply by interpreting a statutory definition of the term "church", such as was possible in the case of the Federal Unemployment Tax Act. *St. Martin Evangelical Lutheran v. South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981). This case would therefore have to be decided squarely on a constitutional basis, which the Supreme Court was able to avoid in *St. Martin.*

While Defendant argues its constitutional position with some force, the difficulty is that the argument is addressed more to the ultimate merits of the case rather than to the pending question of discovery. That is, Defendant argues that the ultimate forced requirement of paying the federal minimum wage would interfere with its religious beliefs and cause excessive entanglement between church and state. Plaintiff quite properly responds, however, that this argument is based on certain assumptions which have not as yet been proved. As the Court sees it then, the immediate question is simply whether requiring a response to the propounded interrogatories would itself violate the First Amendment. The Court concludes that it would not. Although dealing with the attempted enforcement of Title VII rather than the F.L.S.A., the Fifth Circuit has observed that even in a religious organization, there is a difference between ministers and other employees. "While religious organizations may designate persons as ministers for their religious purposes free from any governmental interference, bestowal of such a designation does not control their extra-religious legal status." *E.E.O.C. v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 283 (5th Cir.1981). The court added: "Neither the Supreme Court nor this court has held that the employment relationship between a church and all of its employees is a matter of purely ecclesiastical concern." *Id.* at 287. The court concluded that a legal exemption for the seminary's support staff and other non-ministers was not constitutionally compelled. The case was then remanded to the trial court because, "(I)n the absence of exact job descriptions of all positions on the administrative staff, we are unable to be precise as to the category of all personnel." *Id.* at 285. The same predicament confronts this Court.

At least by implication, Defendant suggests that all of its employees are members of the Church who have received a divine call to Christian education and who all believe that it is their right and duty to serve God by working for minimal compensation. Unless Defendant responds to the interrogatories, however, there is simply no way to

**6**

verify the truth of that allegation. Moreover, Plaintiff correctly observes that even if these allegations be proved, the constitutional issue would result from attempting to force a minimum wage and not from answering the interrogatories. In this respect then, the instant case is similar to those where the IRS has sought necessary information from church records. The Fifth Circuit has held that requiring a church to comply with a summons in order to show its entitlement to tax-exempt status does not violate the establishment clause and results in only an incidental burden on the free exercise of religion. *United States v. Holmes,* 614 F.2d 985, 989 (5th Cir.1980). The court stated that the minister of the church "simply must allow the government access to information in order to determine whether the church remains within the criteria for a lighter tax burden." *Id.* at 989. Similarly, the Defendant in this case simply must answer these interrogatories in order to enable the Court to have any meaningful basis to evaluate the First Amendment claims on the merits. *United States v. Grayson County State Bank,* 656 F.2d 1070 (5th Cir.1981).

The four interrogatories could not possibly in themselves cause an excessive entanglement with the Church or interfere with anyone's free exercise of religion. The interrogatories are simply designed to elicit who in fact does work at the day care center, how they are paid, and what are the requirements for the position. This information is critical to the ultimate resolution of this case. For example, the Plaintiff already concedes that if the employees are truly "volunteers", the F.L.S.A. would not apply. *See Turner v. Unification Church,* 473 F.Supp. 367, 377 (D.R.I.1978). It further concedes that to the extent the employees are professional or other "white collar workers", they are exempt by law from the minimum wage and overtime provisions. On the other hand, it is entirely possible that among the employees of the day care center are janitors, secretaries, bookkeepers, receptionists, and other categories of personnel who are not ministers in any sense of the word and perhaps may not even be members of the Defendant Church. It cannot be disputed that such information would be vital to the merits of the case. As indicated by Justice Rehnquist, confronted with a similar discovery problem in connection with an attempt to enforce the Equal Pay provisions of the F.L.S.A. against a church, the review of the constitutional claims should come, if at all, "only after a full record is compiled in the course of the present litigation in the District Court." *Pacific Union Conference v. Marshall,* 434 U.S. 1305, 1309, 98 S.Ct. 2, 4, 54 L.Ed.2d 17 (1977). The case of *Surinach v. Pesquera de Busquets,* 604 F.2d 73 (1st Cir.1979) is not controlling. There, the Puerto Rico Department of Consumer Affairs decided to investigate religious schools for the purpose of deciding whether to impose a ceiling on the cost of the schools. The First Circuit concluded that such an investigation should not even begin because "we cannot conceive—nor have we been apprised—of any rational end product use of this information which will not encroach on appellants' First Amendment rights." *Id.* at 75. The same cannot be said of the information sought in this case. The F.L.S.A. is an Act of Congress designed to serve society in a nondiscriminatory manner by improving the lot of all workers. As such, it has already withstood challenge on First Amendment grounds. *Mitchell v. Pilgrim Holiness Church Corp.,* 210 F.2d 879 (7th Cir.), *cert. denied,* 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136 (1954). While the Court need not decide that ultimate issue at this point, it will require the Defendant to furnish the requested information so that an informed decision can be made at the appropriate time. Accordingly, the motion for protective order is DENIED. Defendant shall answer the interrogatories within thirty (30) days.

On another matter, the Court notes the pendency of four separate Rule 1 motions by four different members of the Gibbs and Craze firm. Each attorney asks to be appointed as "attorney in charge". There can only be one attorney "in charge" and the petitioners should agree among themselves

who that will be. Upon being notified of the decision, the Court will enter an appropriate order.