AMBASSADOR COLLEGE,
Plaintiff-Appellant,

v.

Sally J. GEOTZKE, etc., et al.,
Defendants-Appellees.

No. 80–7479.

United States Court of Appeals,
Fifth Circuit.*
Unit B

May 6, 1982.

Rehearing and Rehearing En Banc
Denied June 4, 1982.

Jones, Cork, Miller & Benton, W. Warren Plowden, Jr., Eric D. Griffin, Jr., Hubert C. Lovein, Jr., Macon, Ga., Ben B. Mills, Jr., Fitzgerald, Ga., for plaintiff-appellant.

John T. Croley, Jr., Fitzgerald, Ga., Arthur K. Bolton, Atty. Gen., H. Perry Michael, Senior Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before TUTTLE, HILL and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

In February 1975, Madeline Hopkins Shaffer executed a deed and real estate trust agreement. This deed and trust agreement provided that upon her death title to her home would pass to Joseph Pope and Willard McMillan as trustees for Ambassador College. Mrs. Shaffer died in June 1978. The deed and trust agreement were recorded in July 1978. Shortly thereafter, Pope and McMillan quitclaimed their interest in the property to Ambassador College.

Sally Geotzke, the daughter and sole heir of Mrs. Shaffer, then brought suit against Ambassador College and the two trustees in the Superior Court of Ben Hill County, Georgia. She sought the cancellation of the deed on the grounds, *inter alia*, of the mental incapacity of Mrs. Shaffer, undue influence, and fraudulent misrepresentation.

The discovery process then began. Geotzke filed seventeen interrogatories and six requests for production of documents. Ambassador College refused to respond to

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

many of these interrogatories and requests for production of documents. In substance, the information that Ambassador College refused to produce consisted of:

(1) The names and information of persons in Georgia who have conveyed property by deed or trust agreement to Ambassador College, or have executed a will devising property to Ambassador College.

(2) The amount of annual compensation paid to officers, directors, and members of the boards of trustees of Ambassador College and the Worldwide Church of God.

(3) The gross revenues of Ambassador College for the years 1974–77.

(4) The compensation paid to Herbert W. Armstrong by Ambassador College and the Worldwide Church of God for the years 1974–77.

Ambassador College based its objections to these questions on first amendment considerations. Ambassador College is endowed and supported by the Worldwide Church of God. It also acts as the seminary of the church.

Shortly after receiving the college's answer, Geotzke filed a motion to compel discovery. A hearing was held on the motion and the court entered an order sustaining Ambassador College's objections to some of the questions and ordering the remainder, in substance listed above, to be answered. Ambassador College refused to comply with this order.

The state trial court then received from Geotzke a motion for imposition of sanctions. Ambassador College, after a hearing on this motion, failed to persuade the trial judge and judgment was thereafter entered against it as a sanction, as requested by the appellee.

Ambassador College then appealed to the Georgia Supreme Court. That court upheld the trial court ruling. *Ambassador College v. Goetzke*, 244 Ga. 322, 260 S.E.2d 27 (1979). The Georgia court did not rule on Ambassador College's constitutional claim, rather it affirmed on the basis of the Geor-gia statute (Ga.Code Ann. § 81A–126) dealing with the relevancy of information sought in discovery. The appellant then petitioned the United States Supreme Court for a writ of certiorari, which was denied. *Ambassador College v. Goetzke*, 444 U.S. 1079, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980).

Ambassador College then filed an action in the Middle District of Georgia under 42 U.S.C. § 1983. It sought a declaratory judgment that the judgment against it entered by the Georgia trial court was unconstitutional. Further, the college sought a permanent injunction against the appellees from enforcing the judgment or taking any action with respect to the property in question. The district court dismissed the complaint on the grounds that it lacked subject matter jurisdiction. This appeal followed.

This case presents a difficult jurisdictional issue. At the core of the jurisdictional question is whether Ambassador College has a colorable first amendment claim. If no such claim is present, we need not consider whether the district court had jurisdiction to determine if the Georgia court denied the appellant a due process right by refusing to address the constitutional claim. We hold that Ambassador College has presented no substantial first amendment claim and therefore affirm the district court's dismissal of the action.

The appellant maintains that the Georgia trial court's order compelling discovery infringed upon its constitutional freedom of "religion" (presumably stemming from the free exercise clause). It relies primarily upon *Surinach v. Pesquera de Busquets*, 604 F.2d 73 (1st Cir. 1979), for the proposition that any investigation into church-related schools may only be conducted after a balancing of interests involved, with the burden upon the party seeking discovery to prove that the information sought would not infringe upon the free exercise of religion. We do not see *Surinach* as being relevant to the instant case.

*Surinach* involved an attempt by the Commonwealth of Puerto Rico to investigate the operating costs of Catholic schools there. In doing so, the Puerto Rican offi-

cials were operating pursuant to a statute designed to stem inflation. Under this statute, such an investigation was necessary before price controls could be established. It logically followed that the Puerto Rican government was considering the imposition of price controls over Catholic schools. Further, there existed potential for continuous government monitoring over those schools. Thus, the court could not separate the information-gathering at issue from the ultimate purpose of imposing price controls over the Catholic schools. The imposition of such price controls, the court found, would be constitutionally impermissible. Therefore, it quashed the subpoenas issued by the Puerto Rican government inquiring into the schools' finances.

The First Circuit has viewed *Surinach* in a very narrow light. In *United States v. Freedom Church*, 613 F.2d 316, 320 (1st Cir. 1979), it rejected a claim that requests for documents by the government constituted an impermissible entanglement of church and state. The court stated that where unconstitutional entanglement has been found, such as in *Surinach*, "it has been in the government's continuing monitoring or potential for regulating the religious activities under scrutiny." 613 F.2d at 320. The court held that where the Internal Revenue Service sought to gather information about the church in question, in order to make a determination of the church's tax exempt status, there was no violation of the free exercise clause. There existed no attempt on the part of the IRS to "regulate or in any way become involved in the religious activities or control the financial matters of the church." 613 F.2d at 320. Therefore, the government's summons inquiring into the church's financial matters was enforced as no first amendment rights were involved. It should also be noted that this circuit in *United States v. Holmes*, 614 F.2d 985 (5th Cir. 1980), has stated that a properly drawn IRS summons may be enforced over a church's free exercise privilege claim.

In all the cases heretofore discussed, the government has been a party. This is not the case in the present action. We are faced with the scenario of a church and an individual contesting the validity of a gift by deed. There is no danger of *government* seeking to monitor or regulate a religious group. Indeed, the only government involvement in this case at all is the Georgia trial court's enforcement of the discovery order. We find that there are simply no free exercise considerations of even arguable validity raised by Ambassador College. Ambassador College has not demonstrated how its religious liberty would be infringed upon if it is required to answer the questions put to it. The object of Mrs. Geotzke's lawsuit is to determine whether fraud or undue influence induced her mother's gift to the church. As stated in *Holmes, supra*, conduct of a church is subject to regulation for protection of society:

> Free exercise of religion, as it is encapsulated in the First Amendment, embraces two concepts—freedom to believe and freedom to act. The first is absolute, but the second remains subject to regulation for the protection of society. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). We are not concerned here with the former; Holmes and other congregation members remain unimpeded in the cerebral sphere. The sole issue is whether the Church may refrain from producing documents under a narrowed court order. There is no doubt that this constitutes conduct.

614 F.2d at 989.

In the instant case, certain church members may have been over-zealous in their efforts to finance a seminary. Their actions may have been overreaching and they may have committed a fraud. Thus, the church must respond to discovery requests, as any other similarly situated litigant would be required. As the Supreme Court stated in *Cantwell v. Connecticut*, 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940), "Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public." In the instant case, the appellants are accused of taking questionable actions, bordering upon

fraud. The raising of a first amendment right does not require a balancing test of the interests involved in discovery.

The appellant cites *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120 (1952) and *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 2373, 49 L.Ed.2d 151 (1976) in support of its position. These cases are, however, inapposite to the present inquiry. Though these cases did involve private parties attempting to sue churches, they are fundamentally different from the instant dispute. As Justice Rehnquist pointed out in *General Council on Finance and Administration of the United Methodist Church v. Superior Court of California, County of San Diego*, 439 U.S. 1355, 99 S.Ct. 35, 58 L.Ed.2d 63 (Rehnquist, Circuit Justice, 1978), "those cases are premised on a perceived danger that in resolving intrachurch disputes the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. [Citations omitted.] Such considerations are not applicable to purely secular disputes between third parties and a particular defendant ... in which fraud, breach of contract, and statutory violations are alleged." 439 U.S. at 1373, 99 S.Ct. at 38. Here we do not have a struggle over who will be the Russian Orthodox Archbishop of North America and the Aleutian Islands as in *Kedroff*, or over who has the power to restructure the Serbian Orthodox dioceses in North America as in *Milivojevich*. Rather, we have a purely secular dispute between Ambassador College and Geotzke. Thus, these cases do not aid Ambassador College. There exists no colorable claim under the free exercise clause.

Ambassador College also raises the claim that first amendment associational rights are infringed by the Georgia court order. In support of this position, the appellant cites *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *Bates v. City of Little Rock*, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); and *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). These cases are readily distinguishable. They all involved *governmental* investigation into the NAACP, the goal of which was to obtain membership lists. Given the political climate of those times, the information obtained would probably have been used to "chill" membership in the organization. We are not faced with this sort of scenario in the instant case. The appellees are seeking, *inter alia*, a list of persons who have donated land to Ambassador College. This information is relevant, as it could lead to information regarding whether the Worldwide Church of God has engaged in a pattern of improper conduct. There is no attempt to regulate or in any way become involved in the religious activities or control the financial matters of the church. Nor is there any likelihood that the release of this information will "chill" membership in the church. Thus, we reject the associational rights argument.

Since there are no colorable religious freedom or associational rights in question, no balancing test (as suggested in *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)) between these rights and the needs of Geotzke need be made. Thus, we reject the contentions of Ambassador College on this score.

We note that we have reached this result because some of the questions addressed to Ambassador College were relevant and fell outside of the protection of the Free Exercise Clause. Therefore, they should have been answered. We acknowledge that *some* of the questions propounded arguably appear to implicate constitutional protections. Further, this court believes those questions to be irrelevant. Were those questions alone presented to this court, we would be required to take a closer look at whether the district court had jurisdiction of this case. Trial courts should always be careful to screen out irrelevant, broad based discovery when the answers might implicate constitutional rights of a party.

AFFIRMED.

HILL, Circuit Judge, specially concurring:

In my view, principles of preclusion prevent a federal district court from entertain-

ing the merits of a § 1983 complaint which asserts that the issues have been finally resolved against the complainant in a state court of competent jurisdiction even though it be alleged that, had the state court correctly adjudicated the issues, the complainant would have prevailed.

The asserted First Amendment objection to discovery was submitted to the state trial court, the Superior Court of Ben Hill County, Georgia. That court had personal and subject matter jurisdiction. The ruling adverse to appellant was appealed to the Georgia Supreme Court which affirmed.[1] The Supreme Court of the United States declined to grant the writ of certiorari.

The issue before us is adequately controlled by *Bradford v. Bronner*, 665 F.2d 680 (5th Cir. 1982) (Clark, J.). It is conceivable that a claim under § 1983 might be stated where the injury complained of resulted from state court action, *see Southern Jam v. Robinson*, 675 F.2d 94, 97, n.7 (5th Cir. 1982), but no such case appears here.

While I agree that the case was correctly decided by the state court, I feel it to be an inappropriate presumption on our part to pass judgment upon it. Whether the case came out correctly or not in the state system, the claim asserted in the district court was properly dismissed.

I concur in the judgment affirming the judgment of the district court dismissing the complaint.

---

1.  Our panel holds that the state judicial system ruled correctly, supplying an opinion which, had the Georgia Supreme Court thought it necessary, might have been added to its own. *Ambassador College v. Goetzke*, 244 Ga. 322, 260 S.E.2d 27 (1979). That Court produces more written opinions than any other court of last

resort in the nation. West Publishing Co. (unpublished report). It is not remarkable that it does not so extensively address nonmeritorious assertions in its reasons for judgment.