WALTER H. PUSCH AND EDITH M. PUSCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pusch v. Commissioner
Docket No. 6020-78.
United States Tax Court
T.C. Memo 1982-492; 1982 Tax Ct. Memo LEXIS 255; 44 T.C.M. (CCH) 961; T.C.M. (RIA) 82492; August 25, 1982. Walter H. Pusch, pro se. Thomas G. Norman, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' Federal income tax for 1974 and 1975 in the respective amounts of $493.04 and $394. The issue for decision is whether petitioners are entitled to deductions for 1974 and *256 1975 under section 170 [1] for alleged contributions to an entity designated as "Church of the Tolerants." At the time the petition was filed, petitioners were legal residents of Houston, Texas. They filed joint Federal income tax returns for 1974 and 1975 with the District Director of Internal Revenue, Austin, Texas. This case is the second one in which petitioners have asked this Court to rule on the allowability of deductions for their alleged contributions to the Church of the Tolerants (hereinafter the Church). In the first case, we sustained respondent's disallowance of the deductions. Pusch v. Commissioner,T.C. Memo. 1980-4, affd. in an unpublished opinion 638 F.2d 1353 (5th Cir. 1980). We reach the same conclusion here. On their 1974 income tax return, petitioners reported wages and salaries in the amount of $6,480 and interest income in the amount of $662.75, a total of $7,142.75. On their 1975 income tax return, they reported wages of $3,665.36 but attached a statement explaining that, although *257 an attached Form W-2 shows that they had wages of $6,895.36, they were reporting as income none of the wages received after July 1, 1975; the statement explained that petitioners had taken a vow of poverty as members of a church or religious order on June 30, 1975, and that thereafter none of their earnings are taxable to them. On their income tax return for 1974, petitioners reported a contribution of $5,124.30 to the Church, but deducted a sum equal to only 50 percent of their adjusted gross income, or $3,571.74. On their 1975 income tax return, petitioners deducted $1,860.92 as a charitable contribution to the Church. The notice of deficiency disallowed the claimed deductions for both years and determined that petitioners are taxable on the wages not reported as income for 1975. The Church is not incorporated, has no charter or bylaws, and does not have a place of worship, or hold any form of regular religious services. Mr. Pusch has complete control of the financial affairs of the Church; indeed, there is no real separate financial identity between petitioners and that organization. Petitioners take a living allowance from the purported contributions to the Church in an *258 amount determined by Mr. Pusch. Thus, petitioners are using what they refer to as assets of the Church to pay litigation expenses incurred in the instant suit. In the event of dissolution of the Church, Mr. Pusch has the ultimate authority over the disposition of its assets. Section 170 allows a deduction for contributions to qualified organizations. Section 170(c)(2) defines "charitable contributions" as gifts to or for the use of a corporation, trust, community chest, fund, or foundation; for the organization to qualify, no part of the net earnings may inure to the benefit of a private individual or shareholder and no substantial part of its activities may include the carrying on of propaganda or otherwise attempting to influence legislation. [2]
For the reasons stated more fully by this Court in Pusch v. Commissioner,T.C. Memo. 1980-4, affd. in an unpublished opinion 638 F.2d 1353 (5th Cir. 1980), *259 we hold that petitioners are not entitled to deductions for contributions to the Church. First, petitioners have failed to show that they made "charitable contributions" of the amounts they deducted. To constitute a charitable contribution, the transfer of money or property must be voluntarily made without any expectation or anticipation of economic benefit from the transfer. E.g., DeJong v. Commissioner,309 F.2d 373 (9th Cir. 1962), affg. 36 T.C. 896 (1961). Petitioners made no such transfers. As noted above, Mr. Pusch exercised complete control of the Church's finances, and maintained no real separate financial identity between himself and the Church. In fact, petitioners took a living allowance from the purported contributions. In no real sense, therefore, did Mr. Pusch make a complete transfer of his funds to a separate entity. Second, petitioners failed to show that the Church was organized or operated exclusively for religious or charitable purposes. To be so organized, the organization's assets must be considered dedicated to an exempt purpose. An "organization does not meet the organizational test if its articles or the law of the State *260 in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders." Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs. The Church has no written charter or written bylaws, and in the event of its dissolution Mr. Pusch has ultimate authority over the disposition of its assets. The Church, therefore, was not organized exclusively for religious purposes. Pusch v. Commissioner,supra;Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 772-773 (1978) and T.C. Memo. 1978-336, affd. 603 F.2d 211 (2d Cir. 1979). Third, the purported contributions to the Church were used to benefit petitioners. As pointed out above, petitioners used the allegedly contributed funds to pay their living expenses. No accounting was made to anyone. In every real sense, those funds inured to petitioners' benefit in violation of the section 170(c)(2) requirement. Bubbling Well Church v. Commissioner,74 T.C. 531 (1980), affd. 670 F.2d 104 (9th Cir. 1981); Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Pusch v. Commissioner,supra. *261 The only factual difference between the instant case and the prior action brought by petitioners is that on June 30, 1975, petitioners allegedly took a "vow of poverty" and, as of that date, ceased reporting Mr. Pusch's salary as income. They contend that, as a result of the vow, Mr. Pusch's salary income belongs to the Church and is not taxable to them. The contention has no merit; Mr. Pusch earned the salary and petitioners received and used it for their living expenses. See, e.g., Kelley v. Commissioner,62 T.C. 131, 137-138 (1974); McGahen v. Commissioner,76 T.C. 468, 475 (1981), on appeal (3d Cir., Aug. 24, 1981). Petitioner relies heavily upon Morey v. Riddell,205 F.Supp. 918 (S.D. Cal. 1962), in which the court held allowable as deductions contributions to an informal organization which, the Government conceded, was operated exclusively for religious purposes. In Pusch v. Commissioner,supra, we carefully distinguished that case, and that analysis remains valid. The evidence in that case did not show, as it does here, that the contributors of funds retained control over them or that those funds *262 were used for the living expenses of the contributors. Nor did the evidence in that case show, as it does here, that the principal purpose of the organization was to have a law--sections 170(c)(2) and 501(c)(3)--declared unconstitutional or repealed. As Judge Scott stated in Pusch v. Commissioner,supra: "Petitioner has failed to prove facts which would bring this case within the holding of the Morey case." Apart from their reliance on the Morey case, petitioners do not appear to contend seriously that the Church meets the section 170(c)(2) tests for organizations to which deductible contributions may be made. Petitioners' main contention, as we understand it, is not that the Church necessarily meets those requirements but that because other organizations have been granted tax exemption, denial of the Church's claim to exemption would violate the First Amendment provisions respecting the establishment of religion and the free exercise of religion. These arguments are basically the ones that we rejected in petitioners' prior case, and the decision in that case was affirmed by the court of appeals. Insofar as petitioners' argument is based on the theory *263 that sections 170(c)(2) and 501(c)(3) are unconstitutional, their position is clearly wrong. Almost from the beginning of the Federal income tax, Congress has exempted certain organizations from taxation. The exemption is granted because of the benefit the public obtains from their activities and is based on the theory that (H. Rept. No. 1860, 75th Cong., 3d Sess. (1938), 1939-1 C.B. (Part 2) 728, 742): the Government is compensated for the loss of revenue by its relief from financial burden which would otherwise have to be met by appropriations from public funds, and by the benefits resulting from the promotion of the general welfare. The organizational, operational, inurement-of-funds, and influencing-of-legislation tests of sections 170(c)(2) and 501(c)(3), which have been in effect for many years, provide reasonable standards for classifying organizations claiming exemption. And the First Amendment right of free exercise of religion does not foreclose inquiry as to whether those standards have been met. In Christian Echoes National Ministry, Inc. v. United States,470 F.2d 849, 856-857 (10th Cir. 1972), where an alleged religious organization *264 was denied exemption on the ground that it sought to influence legislation, the court said: Such conclusion [that a court may not inquire into a religious organization's activities] is tantamount to the proposition that the First Amendment right of free exercise of religion, ipso facto, assures no restraints, no limitations and, in effect, protects those exercising the right to do so unfettered. We hold that the limitations imposed by Congress in Section 501(c)(3) are constitutionally valid. The frere exercise clause of the First Amendment is restrained only to the extent of denying tax exempt status and then only in keeping with an overwhelming and compelling Governmental interest: That of guarantying that the wall separating church and state remain high and firm. * * * See United States v. Holmes,614 F.2d 985, 989-990 (5th Cir. 1980); Parker v. Commissioner,365 F.2d 792, 795-796 (8th Cir. 1966), affg. in part and revg. and remg. in part a Memorandum Opinion of this Court; cf. Braunfeld v. Brown,366 U.S. 599, 606 (1961). Insofar as petitioners' argument is based on the ground that the denial of the claimed deductions *265 was due to selective, discriminatory action by the Internal Revenue Service, the evidence demonstrates no illegal discrimination. Nor does it show that the denial of the claimed deduction was based on any religious tenets that petitioners may have espoused. See Parker v. Commissioner,supra at 795. For an analysis of the law relating to selective audits of income tax returns, see Karme v. Commissioner,673 F.2d 1062 (9th Cir. 1982), affg. 73 T.C. 1163 (1980). The majro function of the Church appears to be to protest the exemption from tax of churches under section 501(c)(3) and the allowance under section 170 of deductions from income tax for contributions to churches. The policy decisions as to whether such exemptions should be granted and such deductions should be allowed are legislative or political issues, not religious or judicial ones. Regardless of how deeply the promoters of an organization, such as the Church of the Tolerants, may dip into religious lore to debate the merits of those issues, contributions to such an organization are not deductible. To reflect the foregoing, Decision will be entered for the respondent. *266 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. Sec. 501(c)(3) exempts from taxation organizations meeting substantially similar requirements. An organization having sec. 501(c)(3) status, thus, can provide donors with an economic incentive to contribute to it and the organization is not taxed on the income received.↩